JOHN C. AND ELIZABETH A. DEWEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE
Dewey v. Commissioner
Docket No. 25759-91
United States Tax Court
T.C. Memo 1993-645; 1993 Tax Ct. Memo LEXIS 657; 66 T.C.M. (CCH) 1899; December 30, 1993, Filed *657 John C. Dewey and Elizabeth A. Dewey, pro sese. For respondent: Tim Brynteson. PETERSON
PETERSON
MEMORANDUM OPINION PETERSON, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and procedure. Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1988 in the amount of $ 4,999, and an addition to tax attributable to the deficiency under section 6653(a)(1) in the amount of $ 250. The issues for decision are: (1) Whether petitioners failed to report as gross income $ 93 received during the year in issue while working for a local election board; (2) whether petitioners received $ 345 in interest income during the year in issue which they must include in their gross income; (3) whether petitioners are entitled to a deduction for worthless securities under section 165(g); (4) whether petitioners received certain property during the year in issue in a non-taxable exchange under section 1031; (5) whether *658 petitioners are entitled to a bad debt loss in the amount of $ 7,369; and (6) whether petitioners are liable for an addition to tax for negligence under section 6653(a)(1). Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners resided in Sheridan, Wyoming, at the time their petition was filed. During the year in issue, petitioner John C. Dewey (Mr. Dewey) was a mechanic, and petitioner Elizabeth A. Dewey (Mrs. Dewey) worked part-time for a consulting services firm. Petitioners prepared their own Federal income tax return for taxable year 1988. Respondent's determinations in the notice of deficiency are presumed correct, and petitioners bear the burden of proving that the determinations are erroneous. Rule 142(a); . We first address whether petitioners failed to report as gross income $ 93 Mr. Dewey received as compensation for working 1 day at an election board. Petitioners reported on their return filed for the year in issue wages in the amount of $ 4,790, of which $ 1,306.50 is evidenced by a Form W-2 received *659 by Mrs. Dewey for work performed for a consulting services firm. Petitioners contend that the remaining amount of "wages" consists of sums received by Mr. Dewey for services he performed as a mechanic, and the $ 93 he received while working 1 day for a local election board. Mr. Dewey contends that he reported the $ 93, but never received any documentation showing his receipt of the funds. We find that Mr. Dewey is candid and credible on this issue, and we note that respondent has offered no evidence to rebut Mr. Dewey's testimony. We conclude that Mr. Dewey reported the $ 93 received from the local election board, and that the sum is reflected in the $ 4,790 petitioners reported as wages. Accordingly, respondent's determination on this issue is not sustained. We next address whether petitioners received $ 345 in interest income during the year in issue that they must report as gross income. During 1985 Mr. Dewey owned a parcel of land upon which he intended to erect improvements. The local county intended to grant Mr. Dewey a zoning permit, but required him to place $ 3,500 into a trust to pay for the zoning application, and required that all income from the trust be paid *660 directly to the local county treasury for as long as the income was held in the trust. The $ 3,500 remained in the trust during the year in issue, and in fact, $ 345 in interest earned on the trust funds that year was remitted to the local county. Petitioners argue that they are not liable for Federal income taxes on the $ 345 in interest income because they never actually received the funds. Respondent argues that petitioners are liable for Federal income taxes on the $ 345 because the interest income was earned on petitioners' funds, and was applied directly toward satisfaction of petitioners' legal obligation to pay the interest income over to the local county. We agree with respondent on this issue. While petitioners did not actually receive the $ 345 in interest income earned on the trust funds, it is well settled that income is not limited to the direct receipt of cash, and that payments made by a third party toward a taxpayer's legal obligation constitute income to him even though such income is not directly received. . Accordingly, we hold that petitioners are liable for Federal income taxes on *661 the $ 345 in interest income that was earned on their trust funds during the year in issue and remitted directly to their local county treasury. We next address whether petitioners are entitled to a claimedcarryover loss in the amount of $ 3,000 for worthless bonds, and whether they are entitled to report a current loss from worthless securities in the amount of $ 20,000. On the Schedule D attached to their return filed for the year in issue, petitioners reported a capital loss carryover in the amount of $ 30,441.45, stemming from bonds they claim became worthless in 1987. As a result of the reported loss carryover, petitioners claimed a carryover loss deduction on their Schedule D in the amount of $ 3,000. In addition to this claimed deduction, petitioners, at trial, claimed they are entitled to report an additional $ 20,000 capital loss due to bonds that became worthless during 1988. Respondent argues that petitioners are not entitled to either their claimed $ 3,000 loss carryover, or to their claimed current $ 20,000 capital loss due to bonds that became worthless during 1988. Respondent's positions are based on the contention that petitioners have failed to substantiate *662 both their basis in any bonds they owned, and the year in which such bonds may have become worthless. Based on the record in this case, we agree with respondent on this issue. Section 165(g) permits a deduction for losses sustained during the taxable year due to a security becoming worthless during the taxable year, to the extent allowed by sections 1211 and 1212, which respectively limit the deductibility of such losses in the case of individuals to $ 3,000 during the taxable year and provide for the carryover of excess losses. In order to be entitled to a deduction for worthless securities, a taxpayer must show his basis in the worthless securities and must show a fixed and identifiable event demonstrating the worthlessness of the securities. Sec. 165(b); . Petitioners testified that their claimed $ 3,000 capital loss carryover deduction and their newly claimed $ 20,000 worthless securities loss stem from bonds declared worthless, respectively, during bankruptcy proceedings involving the bond issuers in 1987 and 1988. However, petitioners have not provided the Court with any evidence showing a fixed and *663 identifiable event demonstrating the worthlessness of their securities, and their testimony on this issue is vague and unhelpful. Petitioners did not testify with specifics regarding the bankruptcy proceedings, essentially stating that they have tried to obtain information regarding the bankruptcy proceedings but have been unsuccessful. Based on such facts we must conclude that petitioners have failed to prove that they sustained their claimed losses from worthless securities. See , affd. on this issue . Accordingly, respondent's determination on this issue is sustained. Because we sustain respondent's determination on the basis of petitioners' failure to demonstrate a fixed and identifiable event showing the worthlessness of the bonds, we need not address respondent's claims regarding petitioners' basis in their bonds. We next address whether petitioners received certain property during the year in a nontaxable like-kind exchange under section 1031. During the year in issue petitioners sold property they owned in Tucson, Arizona, which they used *664 as both their personal residence and as a trade or business location for a commercial storage unit activity. It is undisputed that petitioners engaged in a trade or business activity regarding their storage rental activity. Petitioners sold this property for $ 135,000, and allocated $ 85,000 of the purchase price to their use of the property as a personal residence and $ 50,000 of the purchase price to their use of the property for their storage unit trade or business. As part of the overall purchase price, petitioners received $ 16,900 in consideration in the form of two time share-weeks in Flagstaff, Arizona. On their 1988 return, petitioners elected to exclude their reported gain on the sale of the residential portion of the property under section 1034, but now concede that they are not entitled to such treatment. However, petitioners now argue that they should have excluded their reported gain from the business portion of the property (at least partially), arguing that the business property was transferred to the purchasers in exchange for the time share properties, which they argue constituted like-kind property under section 1031. Respondent contends that the time share *665 properties are not trade or business properties as required by section 1031, and that petitioners therefore may not exclude any gain under its provisions. Based on the record in this case, we agree with respondent on this issue. In order for gain realized on an exchange of business property to be excluded from recognition, the property received in the exchange must also be held for productive use in a trade or business or for investment. Sec. 1031; . Whether the property received in the exchange was intended to be used as business or investment property is determined at the time of the transfer. Petitioners argue that they always intended to and always have held the time share properties for rental investment purposes. However, the record does not support their contention, containing no evidence that petitioners attempted to rent or have ever rented their units at fair rental value. In fact, the record shows that petitioners regularly placed their time share properties in an "exchange bank", which entitled them to annually trade their time share *666 location in Flagstaff with time shares owned by other persons in different locations. Petitioners have not produced sufficient evidence to support their contention that after obtaining time share properties in other locations (such as Hawaii) they sold their right to vacation to third parties at a fair market price. In fact, the record shows that petitioners always have "sold" their vacation rights for exactly the amount of the fees they were charged for entering into the time share exchange bank program, and that the properties they received in exchange often went to people that they knew, such as petitioners' son, who used time share properties petitioners obtained from the time share bank for his Hawaiian honeymoon vacation. Based on this record, we do not find that petitioners obtained the time shares in Flagstaff, Arizona, as property to be used in a trade or business or for investment purposes. Accordingly, we conclude that petitioners are not entitled to exclude part of the gain realized from the sale of their Tucson, Arizona, property under the provisions of section 1031. Related to this issue, we must determine petitioners' basis and the proper amount of selling expenses *667 they may take into account in determining their taxable gain on the sale of the Tucson property. On their 1988 return, petitioners claimed total basis in the property in the amount of $ 77,590.78, and reported total selling expenses in the amount of $ 10,470. At trial, however, petitioners claimed that their basis in the property is $ 92,633.50. However, after examining the record in this case, we find that petitioners have not adequately supported any basis or selling expenses beyond the amounts reported on their return, and we therefore conclude that gain on the sale of the Tucson property must be computed using only the actual figures petitioners reported on their 1988 return (with the exception of depreciation taken on the business portion of the property, for which the stipulated figure of $ 3,941 will be used in the Rule 155 computation resulting from this Opinion). We next address whether petitioners are entitled to a claimed bad debt loss in the amount of $ 7,369.48. In 1986 petitioners were part owners in property that was sold, and in consideration of their ownership percentage, they received a $ 16,748.81 downpayment and a note entitling them to annual interest payments *668 in the amount of $ 7,369.48. Interest payments were made on the note in 1987, but not in 1988. As a result, petitioners commenced foreclosure proceedings and, along with a group of others, reacquired the property in 1989. Petitioners claimed a bad debt loss for the missed interest payment on their 1988 return. In the notice of deficiency, respondent assumed that petitioners reacquired the property in 1988, and therefore determined that section 1038 governed petitioners' reacquisition of the foreclosure property, and that petitioners were required to report gain resulting from the reacquisition. At trial, however, respondent conceded that the only issue related to the foreclosure transaction is whether petitioners are entitled to their claimed bad debt loss. Deductions for business bad debts are authorized by section 166, where a taxpayer is able show that the debt became worthless during the taxable year. Petitioners argue that they satisfy the requirements warranting their claimed deduction because they in fact were not paid their interest. However, it is well settled that we cannot accept the mere default of interest payments as conclusive proof of worthlessness, , *669 and in any event, it is clear in this case that petitioners were adequately secured in their debt during the year in issue, and that the value of their security was not declining and thereby placing their security interest at risk of loss. See , affd. . On these facts, we must conclude that while petitioners suffered an out-of-pocket cash loss, such loss does not constitute a bad debt loss in this case for purposes of deductibility under section 166. Finally, we must determine whether petitioners are liable for the determined addition to tax for negligence under section 6653(a)(1). Negligence is defined as a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. ; . Based on the record in this case, we conclude that petitioners are not liable for the determined addition to tax for negligence. Although we have sustained several of respondent's *670 positions in this case, we have rejected others. Moreover, we found petitioners to be credible and sincere, and find that, in light of some of the complex transactions involved in this case, petitioners acted reasonably in preparing their 1988 return. To reflect the foregoing, Decision will be entered under Rule 155.